O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SHARON POLE, individually,          )  Case No. CV 15-07196 DDP (Ex)
and on behalf of other              )
members of the putative             )  **ORDER GRANTING MOTION FOR CLASS**
class, and on behalf of             )  **CERTIFICATION**
aggrieved employees pursuant        )
to the Private Attorney             )  [Dkt. No. 15]
General Act ("PAGA"),               )
                                    )
                Plaintiff,          )
                                    )
        v.                          )
                                    )
ESTENSON LOGISTICS, LLC, a          )
Nevada limited liability            )
company,                            )
                                    )
                Defendants.         )
                                    )
                                    )
_____ )

    Presently before the Court is Plaintiff Sharon Pole's Motion

for Class Certification. (Dkt. 15.) After considering the parties'

submissions and hearing oral argument, the Court adopts the

following Order.

**I.    BACKGROUND**

    This case arises out of an employee classification dispute

between Plaintiff Sharon Pole and her former employer, Defendant

Estenson Logistics, LLC ("Estenson"). Estenson is a third-party trucking company that moves product for its customers from distribution centers to retail stores located in California. (Plaintiff's Appendix of Evidence ("PA") 6-7 (Deposition of Michelle Alexander 12:2-15:5).) Plaintiff was formerly employed by Estenson as a "Fleet Manager." (Complaint ¶ 14.) Plaintiff brings this action on the grounds that Estenson misclassified her as an "exempt" employee and paid her on a salary basis, without any compensation for overtime hours worked and missed meal periods or rest breaks. (Id. ¶ 15.)

In the present motion, Plaintiff seeks to certify the following class under Federal Rule of Civil Procedure 23(b)(3):

> All current and former California-based salaried "Fleet Managers," or persons who held similar job titles and/or performed similar job duties, who worked for Estenson within the State of California from September 6, 2010 to final judgment.

(Motion for Class Certification ("Mot.") 1.) The gravamen of Plaintiff's class certification theory is that "Estenson misclassified her and other Fleet Managers as exempt because their job duties fail to satisfy any of the requirements for the executive or administrative exemptions." (Id. 1.)

**A.   Estenson's Operation**

Estenson operates out of approximately forty-six distribution centers in California, some of which operate 24 hours a day. (Declaration of Michelle Alexander ¶ 2; Alexander Dep. 26:10-17.) Each location is overseen by a single Site Manager. (Alexander Dep. 89:21-24.) The site mangers are "ultimately . . . responsible for the operations of each facility." Each facility also employs administrative staff, drivers, and yard hostlers. (Id. 23:21-24:5.)

2

1    At eleven of these facilities, Estenson employs "Fleet Managers."
2    (Id. 15:16-16:3.) These facilities are located across California.
3    (Id. 18:7-19 (noting facilities from Redlands, CA in the south to
4    Tracy, CA in the north).) Based on the size of operations, a
5    location can have anywhere from one to five Fleet Managers employed
6    at any given time. (Alexander Decl. ¶ 4.) During her employment,
7    Plaintiff was one of two Fleet Managers at the Lathrop, CA
8    location. (Plaintiff's Dep. 73:10-11.)
9        **B.   Fleet Manager's Responsibilities**
10       According to Estenson's 2013 Fleet Manager job description,
11   the position's responsibilities include ensuring loads are
12   delivered on time, investigating complaints, ensuring company
13   safety policies are understood, assisting in safety inspections and
14   trainings, and filing paperwork generated by shipping activities.
15   (See PA 140-141.) Other versions of the job description include
16   tasks such as enforcing rules and company policies, ensuring safety
17   and compliance, internal and external customer service, HR related
18   tasks like hiring and training, scheduling, billing, complying with
19   reporting requirements, and assisting the site manager. (See PA
20   135-138.) Estenson has confirmed that these job duties apply to all
21   Fleet Managers and are not site-specific. (Alexander Dep. 58:4-8.)
22       Plaintiff asserts that, on a day-to-day basis, Fleet Managers
23   are primarily responsible for dispatching truck drivers, data
24   entry, and taking calls. (PA 190 (Allen Decl. ¶ 4.); PA 193-14
25   (Dorado Decl. ¶ 6); PA 196 (Elliot Decl. ¶ 5); PA 199-200 (Jones
26   Decl. ¶ 6); PA 202 (Taylor Decl. ¶ 5); PA 205 (Thompson Decl. ¶
27   5.).) Fleet Managers create "route packets" based on a load
28   planners assessment of how to arrange a customer's delivery

requests and give these packets to drivers, along with their keys. (Alexander Dep. 26:22-27:24; 61:18-64:25.) Fleet Managers also collect paperwork submitted by truck drivers and input into Estenson's computer system. (Alexander Dep. 73:16-24.) Furthermore, Fleet Managers handle all in-bound truck driver calls, including accident and maintenance reports. (Alexander Dep. 199:5-7; 92:5-97:6.) Some Fleet Managers were also given a "checklist" that memorializes many of these duties. (PA 143-44; PA 101-02 (Towell Depo. 75:6-76:2.)

Estenson elaborates on this account of a Fleet Manager's duties by noting additional responsibilities. For example, Estenson describes the specific considerations a Fleet Manager might accoutn for when deciding how to assign a particular driver to a delivery route. (Alexander Dep. 36:6-37:9; 46:16-19.) Estenson also notes the various responsibilities involved in responding to customer complaints or handling other customer inquiries. (Suarez Decl. ¶¶ 10-11.) While Estenson describes some commonalities in the Fleet Manager role, it also elaborates on the differences. For instance, Estenson explains that larger facilities with more drivers have divided responsibilities among multiple Fleet Managers--with some handling loan planning and billing and others focusing on driver communications--while smaller facilities will have only a single Fleet Manager who is responsible for a broader range of responsibilities. (Towell Dep. 76:3-77:14.)

### C.    Classification of Fleet Managers as Exempt

The basis of Plaintiff's suit is that Estenson misclassifies its Fleet Managers as exempt. (Alexander Dep. 28:4-12.) As exempt employees, Estenson does not pay overtime to its Fleet Managers

4

1   when they work longer than eight hours a day or forty hours a week.

2   (Alexander Dep. 122:13-124:1.) Estenson also does not provide its

3   Fleet Managers with meal and rest breaks. (Towell Dep. 59:22-60:3.)

4   According to Plaintiff, Fleet Managers routinely work longer than

5   eight hours and did not take lunch or rest breaks. (Towell Dep.

6   21:4-12; PA 191 (Allen Decl. ¶ 7); PA 194 (Dorado

7   Decl. ¶ 9); PA 118 (Pole Dep. 104:1-18); PA 191 (Allen Decl. ¶

8   8.).) Defendants acknowledge that Fleet Managers are not entitled

9   to overtime and do not receive scheduled meal and rest breaks but

10  submit evidence that some Fleet Managers have taken lunch breaks.

11  (Suarez Decl. ¶ 15; Towell Dep. 64:9-20.)

12  **II.  LEGAL STANDARD**

13      The party seeking class certification bears the burden of

14  showing that each of the four requirements of Rule 23(a) and at

15  least one of the requirements of Rule 23(b) are met. See Meyer v.

16  Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1041 (9th Cir.

17  2012); Hanon v. Dataprods. Corp., 976 F.2d 497, 508-09 (9th Cir.

18  1992). In determining whether to certify a class, a court must

19  conduct a "rigorous analysis" to determine whether the party

20  seeking certification has met the prerequisites of Rule 23 of the

21  Federal Rules of Civil Procedure. Valentino v. Carter-Wallace,

22  Inc., 97 F.3d 1227, 1233 (9th Cir. 1996). Rule 23(a) sets forth

23  four prerequisites for class certification:

24          (1)   the class is so numerous that joinder of all members
                  is impracticable;
25          (2)   there are questions of law or fact common to the
                  class;
26          (3)   the claims or defenses of the representative parties
                  are typical of the claims or defenses of the class;
27                and
            (4)   the representative parties will fairly and adequately
28                protect the interests of the class.

Fed. R. Civ. P. 23(a); see also Hanon, 976 F.2d at 508.  These four requirements are often referred to as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy. See General Tel. Co. v. Falcon, 457 U.S. 147, 156 (1982).

In determining the propriety of a class action, the question is not whether the plaintiff has stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met. Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 178 (1974). This Court, therefore, considers the merits of the underlying claim to the extent that the merits overlap with the Rule 23(a) requirements, but will not conduct a "mini-trial" or determine at this stage whether Plaintiffs could actually prevail. Ellis v. Costco Wholesale Corp., 657 F.3d 970, 981, 983 n.8 (9th Cir. 2011); see also Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S. Ct. 2541, 2551-52 (2011).

Rule 23(b) defines different types of classes. Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir. 2012). Relevant here, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over individual questions . . . and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

## III. DISCUSSION

### A.   Rule 23(a) Prerequisites

To show that class certification is warranted, Plaintiffs must show that all four prerequisites listed in Rule 23(a) are satisfied.

#### 1.   Numerosity

1    Numerosity is satisfied if "the class is so numerous that
2  joinder of all members is impracticable." Fed. R. Civ. P.
3  23(a)(1). The Ninth Circuit has elaborated that impracticable is
4  not the same as impossible but instead asks courts to determine
5  whether "potential class members would suffer a strong litigation
6  hardship or inconvenience if joinder were required." Rannis v.
7  Recchia, 380 F. App'x 646, 650–51 (9th Cir. 2010) (citing Harris
8  v. Palm Springs Alpine Estates, Inc., 329 F.2d 909, 913–14 (9th
9  Cir.1964)). The "numerosity requirement requires examination of
10 the specific facts of each case and imposes no absolute
11 limitations." Gen. Tel. Co. of the Nw. v. Equal Employment
12 Opportunity Comm'n, 446 U.S. 318, 330 (1980). The Ninth Circuit
13 has typically required at least fifteen members to certify a
14 class, Harik v. Cal. Teachers Ass'n, 326 F.3d 1042, 1051 (9th Cir.
15 2003), and has usually held classes of forty members or more
16 satisfy numerosity, Rannis, 380 F. App'x 651.

17    Plaintiff's Motion for Class Certification states that the
18 putative class includes approximately "45 Fleet Managers." (Mot.
19 11.) Both Estenson's Opposition to the Motion for Class
20 Certification and Plaintiff's Reply note that there are 55
21 potential class members. (Opp'n 11; Reply 15.) On these
22 representations, the court would be inclined to find the
23 numerosity requirement satisfied. Since the completion of
24 briefing, however, Estenson has submitted a Notice of Newly
25 Acquired Facts stating that thirty-four current Fleet Managers and
26 nine former employees have executed release agreements for all
27 claims at issue, leaving "only 17 former employees" in the
28

putative class. (Notice of Newly Acquired Facts ¶ 1.) Estenson did not provide a copy of the release.

Plaintiff challenges the legal effect and enforceability of these undisclosed releases. (Plaintiff's Response to Defendant's Newly Acquired Facts ¶ 1.) According to Plaintiff, the releases must be deemed invalid because they purportedly include a release of the Private Attorney General Act (PAGA) claims, which requires court approval. <u>See</u> Cal. Lab. Code § 2699(l)(2). Plaintiff also contends that even if the releases exist and are valid, they do not alter the class certification analysis because they only release claims that pre-date the release. (<u>Id.</u> ¶ 3 (citing Alexander Dep. 63:18-25, attached to Plaintiff's Response to Defendant's Newly Acquired Facts.) At bottom, Plaintiff's theory of class certification is that Estenson misclassifies Fleet Managers as exempt, and therefore improperly denies them mandated overtime pay and breaks. Even if a current employee released their prior claims, Plaintiff contends that these employees are still misclassified and continue suffer the resulting harms in the course of their employment. Because Plaintiff seeks to certify a class of all Fleet Managers "who worked for Estenson within the State of California from September 6, 2010 to final judgment," Plaintiff believes these current employees should still be considered part of the class. (Mot. 1.)

Without knowing the specifics of the release, the court cannot conclusively determine the validity of the releases. For instance, the court cannot determine if the releases were invalid under California Labor Code section 206.5(a), which prohibits an employer from conditioning wages due on the execution of a

release. Likewise, Plaintiff correctly notes that a release of
PAGA claims requires court approval but the implications of that
are less apparent for the class certification motion. While
individuals cannot release an employer from liability to the
state, individuals can waive their own right to bring PAGA claims.
See Waisbein v. UBS Financial Services Inc., No. C-07-2328 MMC,
2007 WL 4287334, at *3 (C.D. Cal. Dec. 5, 2007). In the instance
case, the PAGA waiver may not have any impact on class
certification because Plaintiff does not claim to bring the PAGA
claims as a class action. To the contrary, she expressly states in
her class certification motion that she is bringing the PAGA claim
as a representative action that does not require class
certification. (Mot. 1.) Thus, the only filed PAGA claim at this
juncture–and thus the only PAGA settlement that might require
court approval–is Plaintiff's representative claim against
Estenson. There is no reason to believe that the releases attempt
to waive Plaintiff's right to pursue her PAGA action.

     Even assuming the validity of the releases, however, the
putative class still meets the numerosity requirement because
there are more than forty members to pursue the misclassification
claim. While the precise number of class members has fluctuated
across the parties' various filing, the last count from Defendant
asserts that there are "thirty-four (34) putative class members
who are current employees" and "seventeen (17) former employee[s]
. . . who have not executed binding settlement agreements with
Estenson." (Notice of Newly Acquired Facts ¶ 1.) Thus, there are
at least fifty-one individual with a potential misclassification
claim against Estenson who are eligible to participate in the

putative class action. As Defendant's notice acknowledges, "the thirty-four current employees who executed release agreements are now barred from pursuing claims for damages that pre-date the date on which they signed the agreements . . . ." (Id. (emphasis added).)

At least one California court has confronted precisely this issue when evaluating the effect of a release where employees released their employer "from all claims for unpaid overtime and any other Labor Code violations," agreed "not to participate in any class action that may include . . . any of the released Claims," and acknowledged that "he or she had spent more than 50% of the time performing managerial duties." Chindarah v. Pick Up Stix, Inc., 171 Cal. App. 4th 796, 798 (2009). In that case, the court upheld that validity of the release because the class action only concerned past unpaid overtime and the release "did not purport to exonerate [the employer] from future violations." This distinction is critical because under California law, "the statutory right to receive overtime pay embodied in section 1194 is unwaivable." Gentry v. Superior Court, 42 Cal. 4th 443, 456 (2007) abrogation on other grounds recognized by Iskanian v. CLS Transp. Los Angeles, LLC, 59 Cal. 4th 348, 366 (2014). Here, where the purported class claim includes allegations of an ongoing misclassification violation, any release by current employees of past claims does not exclude these individuals from participating in a class seeking to correct the misclassification.

With approximately fifty-one class members, the court concludes that the numerosity requirement is met. Out of an abundance of caution, however, the court proceeds to consider

whether even a seventeen-member class would meet the numerosity requirement in this case.[1] As noted above, the "specific facts of each case must be examined to determine if impracticability exists." Haley v. Medtronic, Inc., 169 F.R.D. 643, 647 (C.D. Cal. 1996). In determining whether the requisite numerosity exists in cases where the class number is not great, courts consider "the geographical diversity of class members, the ability of individual claimants to institute separate suits, and whether injunctive or declaratory relief is sought." Jordan v. Los Angeles Cty., 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982).

### (a) Geographical Diversity

There is "no *per se* rule on the number of widely dispersed plaintiffs necessary to support a finding of numerosity." McCluskey v. Trustees of Red Dot Corp. Employee Stock Ownership Plan & Trust, 268 F.R.D. 670, 675 (W.D. Wash. 2010). Courts have found that the numerosity requirement was met where plaintiffs were merely dispersed across counties within the same state. Id. (citing Novella v. Westchester County, 443 F.Supp.2d 540, 546 (S.D. N.Y., 2006)); see also Brink v. First Credit Resources, 185

---

[1] The court undertakes this inquiry both because, without knowing the specific language of the release, it may emerge that the release is more expansive than currently assumed and in the event that additional releases further alter the numerical composition of the class. In the event that additional releases are secured, district courts have found a "duty to supervise communications with potential class members exists even before a class is certified" if it is required to ensure "'the fairness of the litigation process, the adequacy of representation, and the administration of justice generally.'" Cheverez v. Plains all Am. Pipeline, LP, No. CV 15-4113 PSG (JEMx), 2016 WL 861107, at *2 (C.D. Cal. Mar. 3, 2016) (quoting In re Oil Spill by the Oil Rig 'Deepwater Horizon' in the Gulf of Mexico on Apr. 20, 2010, No. 10-md-02179, 2011 WL 323866, at *2. (E.D. La. Feb. 2, 2011)).

1  F.R.D. 567, 570 (D. Ariz. 1999) (holding that the joinder was
2  impractical partially because class members are located throughout
3  the state of Arizona). Similar to the facts at issue here, the
4  court in Agauyo v. Oldenkamp Trucking held that joinder of the
5  proposed class of 34 was impractical because "[t]he plaintiffs are
6  truck drivers who likely live near both . . . Bakersfield, which
7  is within this District, and near Ontario, which is outside this
8  district[.]" Aguayo v. Oldenkamp Trucking, 2005 WL 2436477, at
9  *12 (E.D. Cal., October 3, 2005).  Consequently, "[i]t would
10  likely be difficult for individuals to prosecute in this distant
11  forum." Id.; but see Sandoval v. M1 Auto Collisions Centers, 309
12  F.R.D. 549, 562 (N.D. Cal. 2015) (holding that numerosity was not
13  met where the proposed class had only seventeen members who were
14  all working in the San Francisco Bay Area).

15      In the present case, Fleet Managers are employed in at least
16  the following California cities: Lathrop, Tracy, Bakersfield,
17  Fremont, Mira Loma, Ontario, Redland, La Mirada, and Fontana.
18  (Alexander Dep. 18:10-15.) Assuming that the release of claims did
19  not result in the remaining putative class members all being
20  located in the same or nearby cities, the court finds that the
21  geographical diversity factor counsels in favor of meeting the
22  numerosity requirement.

23          **(b) Ability to Bring Suit Separately**

24      The ability of individual class members to bring suit
25  individually can make joinder impractical when potential class
26  members lack the financial resources to file individual suits.
27  McCluskey, 268 F.R.D. at 675. Putative class members are less able
28  to bring their claims individually when their claims are

relatively small, making it unlikely that the individual would
pursue relief absent class certification.  Millan v. Cascade Water
Services, Inc., 310 F.R.D. 593, 603 (E.D. Cal. 2015); see also
Chastain v. Cam, 2016 WL 1572542, at *1 (D. Ore. April 19, 2016)
(holding that joinder is impractical in part because "Plaintiffs
allege small amounts of individual damages for unpaid breaks").
Individual class members are also unlikely to sue independently
when they face fear or retaliation from an employer. See Buttino,
1992 WL 12013803, at *2 (holding that numerosity was satisfied in
part because "many individual claimants would have difficulty
filing individual lawsuits out of fear of retaliation, exposure,
and/or prejudice, such that it is unlikely that individual class
members would institute separate suits"); see also Aquayo, 2005 WL
2435477, at *12 (citing Mullen v. Treasure Chest Casino, LLC, 186
F.3d 620, 625 (5th Cir. 1999)) (noting that "some of the potential
class members are still employed with defendant and are unlikely
to institute action against their employer").

    Here, where some potential class members are still employed
by Estenson and where the claims are for foregone overtime and
breaks, the court finds that ability to individually bring suit
counsels in favor of finding numerosity.

        **(c) Relief Sought**

    The numerosity requirement is "relaxed" when injunctive or
declaratory relief is sought. Sueoka v. U.S., 2004 WL 1042541, at
*2 (9th Cir., May 5, 2004).  This is largely because the type of
relief sought necessarily implicates judicial economy where a
judgment granting an injunction would avoid duplicative suits
brought by other class members.  See Escalante v. California

1   Physicians' Service, 309 F.R.D. 612, 618 (finding that a class of
2   19 is still sufficiently numerous because "Plaintiff in this case
3   is requesting declaratory and injunctive relief" and because
4   "allowing a class action to be brought would be in the interests
5   of judicial economy"). While there may ultimately be some
6   individualized damage calculations, this putative class includes
7   claims for both injunctive and declaratory relief. Given the facts
8   presented in this case, it would be inefficient and unduly burden
9   the court's docket to require each individual Fleet Manager to
10  separately litigate their misclassification claim.

11       Evaluating the numerosity factors as a whole, and bearing in
12  mind considerations of judicial economy, Plaintiff's putative
13  class satisfies the numerosity requirement.

14       **2.   Commonality**

15       Commonality is satisfied if "there are questions of law or
16  fact common to the class." Fed. R. Civ. P. 23(a)(2). Note that
17  this does not mean that *all* questions of law and fact must be
18  identical across the class; "[t]he requirements of Rule 23(a)(2)
19  have been construed permissively, and all questions of fact and
20  law need not be common to satisfy the rule." Ellis v. Costco
21  Wholesale Corp., 657 F.3d 970, 981 (9th Cir. 2011) (internal
22  quotation marks and brackets omitted). However, posing common
23  questions of trivial fact is not enough: the "question" must be
24  one that "will generate common answers apt to drive the resolution
25  of the litigation." Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct.
26  2541, 2551 (2011).

27       The common question raised by Plaintiff's potential class is
28  whether Estenson properly classified Fleet Managers as exempt

employees, and thus was not required to pay overtime or schedule meal and rest breaks. According to Plaintiff, the commonality requirement is met because the evidence demonstrates that Estenson did not meet any of the requirements of invoking either the administrative or executive exemption. (Mot. 20.)

Under California law, an individual "employed in the transportation industry" qualifies as exempt if the following criteria are met:

> (1) Executive Exemption A person employed in an executive capacity means any employee:
> (a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision thereof; and
> (b) Who customarily and regularly directs the work of two or more other employees therein; and
> (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight; and
> (d) Who customarily and regularly exercises discretion and independent judgment; and
> (e) Who is primarily engaged in duties which meet the test of the exemption. . . .
> (2) Administrative Exemption A person employed in an administrative capacity means any employee:
> (a) Whose duties and responsibilities involve either:
>> (i) The performance of office or non-manual work directly related to management policies or general business operations of his employer or his/her employer's customers; or
>> (ii) The performance of functions in the administration of a school system, or educational establishment or institution, or of a department or subdivision thereof, in work directly related to the academic instruction or training carried on therein; and
> (b) Who customarily and regularly exercises discretion and independent judgment; and
> (c) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity
> (d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or

      (e)  Who  executes  under  only  general  supervision
      special  assignments  and  tasks;  and
      (f)  Who  is  primarily  engaged  in  duties  that  meet  the
      test  of  the  exemption. . . .

Cal. Code Regs. tit. 8, § 11090. Plaintiff argues that Estenson's

Fleet Managers do not satisfy any of the requirements for invoking

an exemption but this is a greater burden than Plaintiff needs to

take on to demonstrate commonality. The statutory test for

invoking an exemption is conjunctive. Thus, if Plaintiff can

demonstrate that all Fleet Managers do not engage in any one of

the required duties under each exception or that they are not

primarily engaged in such duties, she will have supplied a common

answer that will drive the resolution of this litigation.

  Between Estenson's uniform job description of the Fleet

Manager position and the testimony of Estenson's Rule 30(b)(6)

witness that Estenson expects its Fleet Managers to perform the

same duties regardless of their employment location, Plaintiff

argues that commonality is satisfied. (Alexander Dep. 57:11-25;

58:4-8.) Defendant responds that even if a group of employees are

tasked with the same duties, questions about how each employee

performs their duty may preclude class certification in the

exemption classification context. (Opp'n 18-20.) In support,

Estenson relies on Fjeld v. Penske Logistics, LLC, No. CV

12-3500-GHK JCGX, 2013 WL 8360535 (C.D. Cal. Aug. 9, 2013). In

Fjeld, the court considered whether to certify a class of

Operations Supervisors who spent the majority of their time

"assign[ing] drivers and trucks to routes to make [timely]

deliveries based upon customer needs." Id. at *5. The court

determined that resolution of the exemption claim turned on

whether this task required discretion and independent judgement. _Id._ ("For there to be classwide answers on whether the relevant tasks are exempt, Plaintiff must make a threshold showing that the putative class members are preforming the tasks in a substantially similar manner, e.g., by taking into account a similar set of factors."). In the absence of any evidence about how any potential class members other than the plaintiff performed this task, the court found that putative class did not meet the burden of demonstrating commonality.

In the Reply, Plaintiff argues that _Field_ does not resolve her certification claim because she submitted evidence about the factors Fleet Managers must rely on to complete the tasks Estenson posits are discretionary. (Reply 18-21.) With regard to assigning drivers to routes, Plaintiff has submitted evidence that a computer program decides whether a driver can be assigned to a route. (Suarez Dep. at 170:8-171:10.) Likewise, with regard to managing truck breakdowns, Plaintiff has submitted evidence that Fleet Managers call a tow truck from a pre-approved list of vendors and follow the instructions of the maintenance coordinator. (Suraez Dep. 127:9-128:1.) According to Plaintiffs, any choice a Fleet Manager must make are highly structured and largely predetermined.

While there appears to be some variation in the tasks individual Fleet Managers perform, there is also substantial commonality in the tasks Fleet Managers are expected to perform according to both job descriptions issued by Estenson and the individual testimony submitted before the court. Determining whether these tasks satisfy the requirements for classifying an

1   employee as exempt under California law is the sort of question

2   amenable to classwide resolution and adequate to satisfy the

3   commonality requirement under Rule 23(a)(2).

4          **3.   Typicality**

5          Typicality is satisfied if "the claims or defenses of the

6   representative parties are typical of the claims or defenses of

7   the class."  Fed. R. Civ. P. 23(a)(3). "The purpose of the

8   typicality requirement is to assure that the interest of the named

9   representative aligns with the interests of the class. Typicality

10  refers to *the nature of the claim or defense* of the class

11  representative, and *not to the specific facts from which it arose*

12  or the relief sought. The test of typicality is whether other

13  members have the same *or similar* injury . . . ." <u>Hanon v.</u>

14  <u>Dataproducts Corp.</u>, 976 F.2d 497, 508 (9th Cir. 1992) (internal

15  quotation marks omitted) (citations omitted) (emphasis added).

16         Plaintiff argues that her claims are typical in that they are

17  premised on her employment as a Fleet Manager and that there are

18  no defenses unique to her case. Defendants do not expressly

19  challenge this claim. Perhaps Defendants' argument that

20  commonality is not satisfied because different Fleet Managers have

21  different responsibilities can be understood to also challenge the

22  typicality of Plaintiff's claims. But the court has already

23  determined that different Fleet Managers do not appear to have

24  such distinct responsibilities that their classification does not

25  present a common question of law. The court cannot find any

26  additional reason to doubt the typicality of Plaintiff's claims.

27  Thus, the court concludes that typicality is satisfied.

28

### 4.   Adequacy

Adequacy of representation is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Inasmuch as it is conceptually distinct from commonality and typicality, this prerequisite is primarily concerned with "the competency of class counsel and conflicts of interest." Gen. Tel. Co. of Southwest v. Falcon, 457 U.S. 147, 158 n.13 (1982). Thus, "courts must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" Ellis, 657 F.3d at 985. In this case, there is no dispute over this requirement.

### B.   Rule 23(b)(3)

A class action may be certified under Rule 23(b)(3) if "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). In making its findings on these two issues, courts may consider "the class members' interests in individually controlling the prosecution or defense of separate actions," "the extent and nature of any litigation concerning the controversy already begun by or against class members," "the desirability or undesirability of concentrating the litigation of the claims in the particular forum," and "the likely difficulties in managing a class action." Id.

19

1          **1. Predominance**

2      "The Rule 23(b)(3) predominance inquiry tests whether

3 proposed classes are sufficiently cohesive to warrant adjudication

4 by representation." Amchem Products, Inc. v. Windsor, 521 U.S.

5 591, 623 (1997). "Even if Rule 23(a)'s commonality requirement may

6 be satisfied by [a] shared experience, the predominance criterion

7 is far more demanding." Id. at 623-24. Predominance cannot be

8 satisfied if there is a much "greater number" of "significant

9 questions peculiar to the several categories of class members, and

10 to individuals within each category." Id. at 624. However, Rule

11 23(b)(3) predominance "requires a showing that *questions* common to

12 the class predominate, not that those questions will be answered,

13 on the merits, in favor of the class." Amgen Inc. v. Connecticut

14 Ret. Plans & Trust Funds, 133 S. Ct. 1184, 1191 (2013).

15      Plaintiff argues that predominance is satisfied because the

16 realistic requirements of the Fleet Manager positions are

17 identical and that any variation in the position is so minimal as

18 to have no effect on the question of whether a Fleet Manager's

19 duties satisfy any of the requirements for an administrative or

20 executive exemption. (Mot. 23-24.) Defendant asserts that there is

21 variation in the duties of different Fleet Managers. Defendant

22 also argues that this class cannot be certified because it runs

23 afoul of the holding in Comcast Corp v. Behrend, 133 S. Ct. 1426

24 (2013), that the predominance requirement is not satisfied where

25 "questions of individual damage calculations will inevitably

26 overwhelm questions common to the class." Id. at 1433. Here, Fleet

27 Managers did not record their time and Plaintiff acknowledges they

28 did not all work the same number of hours. (Alexander Dep. 11:2-

12:1; Response to Special Interrogatory Nos. 8-10, Gruber Decl., Ex. D.) Thus, Defendant contends that there is no workable method for calculating damages that would not require individual determinations, which overwhelm the efficiency of the class device.

As an initial matter, Comcast cannot be read as a general prohibition on class actions when damages cannot be calculated on a classwide basis. Rather, Comcast stands for the proposition that a "plaintiff must be able to show that their damages stemmed from the defendant's actions that created the legal liability." Leyva v. Medline Indus., Inc., 716 F.3d 510, 514 (9th Cir. 2013). The issue in Comcast was whether a particular model for calculating damages was permissible if it did not only calculate the damages for the theory of liability advanced by plaintiffs. Comcast, 133 S. Ct. at 1433. The Ninth Circuit has repeatedly held since Comcast that "differences in damage calculations do not defeat class certification after Comcast." Pulaski & Middleman, LLC v. Google, Inc., 802 F.3d 979, 988 (9th Cir. 2015), cert. denied, 136 S. Ct. 2410 (2016); accord Jimenez v. Allstate Insurance Co., 765 F.3d 1161, 1167 (9th Cir. 2014).

Here, the Plaintiff posits a single theory of class liability: Fleet Managers are misclassified as exempt. Assuming that can be demonstrated, Comcast requires a damage model that can computer the injury caused by that misclassification without including additional theories of injury that were not prove. It does not stand for the proposition that no model can be utilized to calculate damages. In this case, Defendants do not provide, nor can the court discern, a reason why the damages model would be

1  unable to calculate the injury suffered by unpaid overtime and

2  missed rest and meal breaks of this class of Plaintiffs. As to the

3  question of whether individual questions of liability predominate,

4  the court concludes that this putative class satisfies the

5  predominance requirement. Defendants have submitted evidence that

6  there is some variation in the specifics tasks performed by

7  individual Fleet Managers but Plaintiffs contend that these

8  variations do not address the central question of whether Fleet

9  Managers performed any tasks that would justify an exempt

10  classification. Based on the evidence submitted of the substantial

11  overlap in the Fleet Manager role and the lack of evidence that

12  the some individual Fleet Managers are engaged primarily in exempt

13  tasks, the court finds that predominance requirement is satisfied.

14         **2.   Superiority**

15         Rule 23(b)(3) also requires a class action to be "superior to

16  other available methods for fairly and efficiently adjudicating

17  the controversy." Fed. R. Civ. P. 23(b)(3).  The Rule further

18  provides four factors the Court must consider in Rule 23(b)(3)(A)

19  through (D):

20         (A)   the class members' interests in individually
               controlling the prosecution or defense of separate
21               actions;
           (B)   the extent and nature of any litigation concerning
22               the controversy already begun by or against class
                 members;
23         (C)   the desirability or undesirability of concentrating
                 the litigation of the claims in the particular forum;
24               and
           (D)   the likely difficulties in managing a class action.
25
           Here, Plaintiff argues that Fleet Managers have nearly
26
   identical responsibilities and none of those responsibilities
27
   qualify the position as exempt. (Mot. 24-25.) Given this theory of
28

                                  22

1  liability, Plaintiff contends that the class device is superior to

2  repeated mini-trials showing that a Fleet Manager performs the

3  same responsibilities and is not properly classified as exempt.

4  (Id.) Defendant main argument as to superiority is that Plaintiff

5  has not submitted "a suitable and realistic plan for trial of the

6  class claims" and that individual trials would allow the court to

7  better assess the duties and responsibilities of individual Fleet

8  Managers. (Opp'n 24 (quoting Zinser v. Accufix Research Inst.,

9  Inc., 253 F.3d 1180, 1189 (9th Cir. 2001)).) In this particular

10  case, the variation between Fleet Managers's responsibilities

11  appears limited and does not contravene Plaintiff's contention

12  that all Fleet Managers do not engage in certain activities

13  required to invoke either the administrative or executive

14  exemption. This issue appears to amenable to classwide resolution

15  and would more efficiently answer the classification question than

16  requiring numerous individual trials.

17  **IV.  CONCLUSION**

18       For the reasons set forth above, the Court GRANTS Plaintiff's

19  Motion for Class Certification.

20

21  IT IS SO ORDERED.

22

23  Dated: August 10, 2016

24                                 DEAN D. PREGERSON
                                   United States District Judge

25

26

27

28

23